THE LAW OFFICES OF

# THOMAS J. MARLOWE

ADMITTED IN ARIZONA AND NEW YORK

**Filed via ECF**

November 13, 2020

Honorable G. Murray Snow
U.S. District Court, District of Arizona
401 W. Washington Street
Phoenix, Arizona 85003

      RE:    *Pratte v. Bardwell*, 2:19-cv-00239-PHX-GMS

Dear Judge Snow:

Tom Connelly and I represent Defendants. Defendants intend to move for summary judgment on all 3 of Plaintiff's claims, i.e., Count 1-Breach of Contract; Count 2-Promissory Estoppel; and Count 3-Unjust Enrichment. Defendants assert that the monies transferred were completed gifts and Pratte's current claims are meritless. Defendants may also seek judgment/partial summary judgment on various issues/defenses that may be dispositive as to some claims.

**Factual Background:** Jeff Bardwell ("Bardwell") first met Ron Pratte ("Pratte"), in 2001. Bardwell was one of thousands of employees at Pratte's company, which Pratte sold in 2005 to Pulte Homes. By 2005, Bardwell had developed a close relationship with Pratte. It is undisputed that Pratte treated Bardwell like a son and testified that he referred to Bardwell as his "adopted son." In 2005, with a mid-9-figure sale to Pulte pending, Pratte determined he would reduce his taxable estate by gifting monies or assets. Pratte decided to gift assets to his two natural sons, his son-in-law, an individual married to his niece ("Carrier"), and Bardwell. Pratte's longtime CFO/CPA, Bill Shisler, questioned Pratte about including Carrier and Bardwell as they were not immediate family and advised Pratte the total gift tax due would be substantial. Pratte confirmed his intent to make the gifts and to pay all gift taxes. In December 2005, Pratte arranged a surprise gifting ceremony/meeting. Three of the gift recipients resided in Nevada, and 2 resided in Phoenix. Pratte instructed everyone to meet him at the North Las Vegas airport. The five gift recipients did not know the purpose of the meeting, only that Pratte was traveling in his own plane with Bardwell and one son. At the brief airport meeting it is undisputed Pratte handed each gift recipient an envelope containing a $2M cashier's check, told them he would transfer other real properties, and expressed his hope they would work together using the gifts to build a business greater than the one he just sold. The gift recipients subsequently formed several LLCs, including a construction company. Each gift recipient was a 20% member in each LLC. Pratte later transferred real property and leases to the LLCs completing the gifts. More than 18-months later, Pratte filed a Form 709--2006 Gift Tax Return in which he swore, under penalty of perjury, that the transfers were gifts. Form 709 also requires disclosure of any expected remuneration or *quid pro quo (*like the purported personal services contract). Pratte disclosed nothing to the IRS on his return. The gifts and the gift tax paid, combined, totaled about $50M. The gift recipients did not function cohesively. Pratte's sons ceased active involvement after about 1-year, the property assets were sold by 2014, and the construction business is defunct. Bardwell continued to assist Pratte with personal projects, gratuitously, for years. Their relationship slowly

deteriorated. Contact ceased in March 2018. Pratte filed his Complaint in state court in December 2018 and Bardwell removed the matter to this Court in early 2019.

**Major Disputed Fact(s):** Pratte claims Bardwell contractually obligated himself to work for Pratte for the rest of his life. It is this purported oral promise that serves as the basis for Pratte's 3 claims. Bardwell denies making any promise/oral contract with Pratte.

**Contentions:** The transfers to Bardwell were gifts and Pratte is estopped from claiming otherwise. It is undisputed that Pratte transferred all monies and real property to the gift recipients or their LLCs. It is also undisputed that Pratte relinquished all dominion, ownership, possession and control over the monies and properties. *See* A.R.S. Section 33-601; *Milner v. Colonial Trust Company*, 198 Ariz. 24, 6 P3d 329 (2000). It is undisputed that the gifts made to each recipient were simultaneous and identical. It is undisputed that in October 2007 Pratte filed his Gift Tax Return (signed under penalty of perjury), representing that the transfers were gifts. It is undisputed that he did not differentiate Bardwell's gift from the other recipients for tax purposes and that he never amended his return. By virtue of his tax filings, Pratte is estopped from denying that the monies and properties transferred were anything other than gifts. *See Mahoney-Buntzman v. Buntzman*, 12 N.Y. 3d 415, 422, 990 N.E.2d 62 (2009)("A party to litigation may not take a position contrary to a position taken in an income tax return…in which he swore that the representations contained within it were true.…We cannot, as a matter of policy, permit parties to assert positions in legal proceedings that are contrary to declarations made under penalty of perjury on income tax returns."); *see also Livathinos v. Vaughn*, 121 A.D. 3d 485 (1st Dept. 2014); *Walsh v. Blaggards III Restaurant Corp.*, 131 A.D. 3d 854 (1st Dept. 2015).

Pratte's contract claim fails as a matter of law. Pratte must prove the existence of the contract, Bardwell's breach, and damages. The existence of a valid contract requires "an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Savoca Masonary Co. v. Homes & Son Constr. Co.*, 112 Ariz. 392, 394 (1975). Pratte cannot prove an offer and acceptance, and the fictitious oral contract would be too vague to be enforceable. More importantly, Pratte testified he viewed and still views Bardwell as his employee. Pratte's alleged contract claim is, therefore, against public policy (indentured servitude) and, in any event, would be unenforceable because it is not in writing. *See generally*, A.R.S. § 23-1501; *White v. AKDHC*, 664 F.Supp.2nd 1054 (D. Ariz. 2009). Although effectively superseded by A.R.S. § 23-1501, any purported employment contract would also violate the Statute of Frauds, A.R.S. § 44-101, and would be invalid if not in writing.

Pratte's promissory estoppel claim also fails as a matter of law. Pratte cannot show Bardwell promised to work for Pratte, that Pratte reasonably relied upon that promise, and that Pratte was damaged/suffered some detriment. Bardwell contends no promise was made, reliance in any event would be unreasonable, and there were no damages. Further, in this context, Arizona requires more, i.e., a second promise. As noted above, there is no written agreement, and promissory estoppel can be used to prove an oral contract only if Pratte alleged Bardwell made a second promise. Pratte would have to prove Bardwell promised to put the alleged agreement in writing and refused to do so, or that he promised he would not rely upon any statute to invalidate an oral personal services contract. *See Mullins v. Southern Pacific Transp.*, 174 Ariz. 540, 851 P.2d 839 (1992), *review denied*, June 2, 1993. Pratte testimony was that Bardwell made only 1 promise.

Pratte's third claim is unjust enrichment. Evidence establishes Pratte made a voluntary unsolicited gift. An unsolicited gift is not "unjust." Pratte is effectively relying upon the same unenforceable and illusory oral contract to garner what would become a "second bite at the apple." Pratte also cannot prove other necessary elements. For example, Pratte did not transfer

deeds and leases (the bulk of the gift) to Bardwell, but rather to separate "persons" (LLCs) who are not parties to this suit. Pratte has not alleged he unjustly enriched the LLCs. It is undisputed Pratte had no control over the LLCs or the LLC's disposition of properties or funds owned by the LLCs. Pratte cannot pursue an unjust enrichment claim against Bardwell under an unalleged third-party beneficiary theory for assets conveyed to legal entities.

Additionally, Bardwell may seek partial summary judgment that the $2M check given at the airport and the gift tax paid were, in any event, separate gifts involving no offers/negotiations or agreements of any kind based upon the undisputed facts. Further, if everything Pratte claims is presumed true, then Bardwell would still owe income tax on wages, and accordingly, Pratte's decision to pay $3.5M in unnecessary gift tax had nothing to do with Bardwell, was erroneous, and did not as a matter of law benefit Bardwell thereby reducing Pratte's monetary claims.

Sincerely,

Thomas J. Marlowe

Cc: G. Collins; T. Connelly