# EXHIBIT 1



IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald H. Pratte, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) No. |
| | ) 2:19-cv-00239- |
| Jeffrey Bardwell and Fanny F. | ) PHX-GMS |
| Bardwell, husband and wife, | ) |
| | ) |
|     Defendants. | ) |
| | ) |

DEPOSITION OF RONALD PRATTE

(Volume II   Pages 1 through 83)

Scottsdale, Arizona
August 10, 2020
1:00 p.m.

REPORTED BY:
ANITA LANDEROS, RPR
Certified Reporter
Certificate No. 50538

PREPARED FOR:

I N D E X

WITNESS                                                       PAGE

RONALD PRATTE

    Examination by Mr. Marlowe                             5


QUESTION INSTRUCTED NOT TO ANSWER

Page      Line
 39        01


MR. MARLOWE'S REQUEST

Page      Line
 63        06


E X H I B I T S

Deposition
Exhibits      Description                                    PAGE

10            Faxed cover letter to Katie                      61
              Waters - Highly Confidential
              Attorneys' Eyes Only
              (Bates RHP000178 through
              000255) (78 pages)


11            Sacks Tierney Invoice, dated                     72
              July 18, 2006 (Bates SAK000170,
              171) (2 pages)

1        DEPOSITION OF RONALD PRATTE
2        (Volume II  Pages 1 through 83)
3  was taken on August 10, 2020, commencing at 1:10 p.m., at
4  Kercsmar & Feltus PLLC, 7150 East Camelback Road,
5  Suite 285, Scottsdale, Arizona, before Anita Landeros, a
6  Certified Reporter in the State of Arizona, via
7  videoconference.
8
9  COUNSEL APPEARING VIA VIDEOCONFERENCE:
10 For the plaintiff:
11     By:  MR. GREGORY B. COLLINS
            Kercsmar & Feltus PLLC
12          7150 East Camelback Road
            Suite 285
13          Scottsdale, Arizona  85251
14
15
   For the defendants:
16
        By:  MR. THOMAS M. CONNELLY
17           Law Offices of Thomas M. Connelly
             2425 East Camelback Road
18           Suite 880
             Phoenix, Arizona  85016
19
20              AND
21
        By:  MR. THOMAS J. MARLOWE
22           Law Offices of Thomas J. Marlowe
             2425 East Camelback Road
23           Suite 880
             Phoenix, Arizona  85016
24
25

Page 22
DEPOSITION OF RONALD PRATTE                    VOLUME II
August 10, 2020

1  A.  I don't know.

2  Q.  Okay.  And when did you decide you were going to
3  transfer the -- we'll call it the real properties to the
4  five individuals?  At the same time you decided to cut the
5  checks or later?

6  A.  Same time.

7  Q.  Okay.  Did you tell that to Bill Shisler?

8  A.  I don't remember.

9  Q.  So besides saying you have no recollection, and
10 if that's your truthful testimony, that's your testimony.
11 Tell me what you told Bill and how it ended up being that
12 he decided to prepare a gift tax return that's at issue in
13 this case.

14 A.  I don't think I told him to prepare anything.  I
15 just told him what I was going to do.  That was his job,
16 to figure out how to get it done.

17 Q.  And to do his job, he probably asked you
18 questions?

19 A.  He asked me what the whole program was.  He
20 didn't ask me specifically about anything.

21 Q.  Okay.  What did you tell him "the whole program
22 was"?

23 A.  I already explained it to you twice.

24 Q.  Okay.  At some point, Mr. Shisler created a gift
25 tax return, right?

1   A.   I don't recall.  I really don't.

2   Q.   Okay.  So who decided that a gift tax return was
3   the appropriate form to file?  You or Mr. Shisler?

4   A.   I wouldn't know anything about it, so it would
5   have to be him.

6   Q.   Okay.  And he would have made that decision,
7   based upon what you told him, right?

8   A.   I would think that he would make a decision based
9   on the IRS rules.

10  Q.   Okay.  But information is what determines what
11  rules apply; is that fair to say?

12  A.   I don't know the answer to that.

13  Q.   Mr. Pratte, I could give you $100,000 as a gift
14  today.  I could give you a $100,000 and tell you to build
15  me a very nice storage shed and other stuff.  Two
16  different things.  One's a gift.  One might be a 1099.
17  You have to give somebody information to know what to
18  file.

19           So my question is:  Mr. Shisler filed a gift
20  tax return.  Is it fair to presume that he made that
21  decision based on the information you provided him?

22           MR. COLLINS:  Objection, form.

23           Go ahead.

24           THE WITNESS:  I don't know how to answer
25  your question.  I mean, he obviously had some information

1   to file this form, but I don't remember what conversation
2   happened between he and I.
3       Q.   BY MR. MARLOWE:  Okay.  Did you tell Mr. Shisler
4   it was a gift?
5       A.   I told him it was a gift for everybody but
6   Bardwell.
7       Q.   You have a clear memory of that, huh?
8       A.   That was the deal going in.  Why wouldn't I have
9   a clear memory of it?  He's the one that doesn't have the
10  memory.
11      Q.   What about the other four?
12      A.   They seem to have a pretty clear memory of it.
13      Q.   Was it a gift to the other four?
14      A.   Yes, it was.
15      Q.   Okay.  So --
16      A.   They're my family.
17      Q.   Yeah, I know.  You've made that abundantly clear.
18              Now earlier you said you don't remember any
19  discussions you had with Shisler.  Now you're remembering
20  you made it clear with Bardwell.
21      A.   I had a discussion with Shisler about my family.
22      Q.   So how do you think --
23      A.   And I didn't instruct Shisler to fill out a gift
24  tax return, sir.  I don't know how that stuff works.
25      Q.   Why don't you look at 4A.

1   Q.   BY MR. MARLOWE:  What did you tell Shisler about
2  your other four family members, so that he knew theirs was
3  a gift?
4   A.   I said, I'm going to give these to my kids.
5   Q.   So is it your testimony that you specifically
6  told Shisler that Jeff Bardwell's was not a gift?
7   A.   I don't specifically recall what I told Shisler
8  about Jeff Bardwell, but I told Jeff Bardwell.  I told the
9  other four parties, in the thing, what the deal with
10 Bardwell was.  By that -- it was a period of time what was
11 going down.
12  Q.   Okay.  Thank you for that editorial.  Do you want
13 to answer my question now?
14          You don't recall telling Shisler anything or
15 you do?
16          MR. COLLINS:  I think he did answer that
17 question.  He said that he didn't recall telling Shisler
18 anything specific about Bardwell.
19  Q.   BY MR. MARLOWE:  Okay.  So Mr. Shisler knew
20 nothing different between your four family members and
21 Bardwell; is that what you're saying?
22          MR. COLLINS:  Objection to the form.
23          Go ahead, Mr. Pratte.
24          THE WITNESS:  I don't remember specifically
25 what I had -- what verbiage was used, like talk to Shisler

1  about this, okay.  But I do remember telling Shisler that
2  Bardwell was going to work for me until I die.
3       Q.   BY MR. MARLOWE:  Okay.
4       A.   That was the only reason that he was included in
5  the group.
6       Q.   And that's the only reason?
7       A.   Yes, sir.
8       Q.   Let me ask you a question here.  Why didn't you
9  just pay Bardwell whatever, half a million, a million a
10 year to work for you the rest of your life?
11      A.   I ask my -- question that every day.
12      Q.   Well, how about you answer it?  Why didn't you
13 just do it that way?
14      A.   I wish I would have.
15      Q.   Okay.  Why did you decide to include Bardwell
16 with the other four people?
17      A.   Because I was trying to treat him like the other
18 four people.
19      Q.   Like one of your family?
20      A.   Like the other four people and this is what I get
21 for it.
22      Q.   You treated the other four people as your family,
23 right?
24      A.   They are my family.
25      Q.   And you treated Jeff the same as your family,

1  would take care of whatever was involved in getting that
2  done.
3      Q.   You're the donor, correct?
4      A.   "The donor"?
5      Q.   Yes.  You're the person giving the gift,
6  completing the gift, signing the gift tax return.  You're
7  the donor, right?
8      A.   That's correct.
9      Q.   Okay.  This is your answer, which I'll tell
10 you -- or I will represent to you is verified and under
11 oath when you do these.  It's the same as your testimony
12 here today.
13          It says:  William Shisler to carry out your
14 wishes with respect to the conveyances.  And my question
15 is very simple.  That's saying that you conveyed your
16 wishes to Shisler.  I'm asking you what did you
17 specifically tell Shisler?
18          MR. COLLINS:  Objection, form.
19          The question is:  What did you tell Shisler?
20 Answer that question.
21          THE WITNESS:  I think I already answered it.
22 I told Shisler that I was giving each guy -- the five guys
23 $2 million and I was giving them the commercial properties
24 that I owned and they were going to go set up a business
25 and build houses and commercial buildings, et cetera.

1  Q. BY MR. MARLOWE: And it's your testimony that you
2  told him Bardwell was different?
3  A. I think I told him that Bardwell had agreed to
4  work for me for the rest of my life.
5  Q. Are you sure?
6  A. I'm as sure as I can be after 15 years.
7  Q. Well, this answer was done nine months ago.
8  A. Okay. But it still happened 15 years ago.
9  Q. So you might not remember accurately; is that
10 fair?
11 A. That's very fair.
12 Q. Okay. If you go down on that same page, Page 3.
13 A. Okay.
14 Q. It starts on Line 13, at the end, "Rather."
15 First word in the sentence on Line 13 is "Rather."
16 A. Okay.
17 Q. Read that sentence to me.
18 A. Rather, Mr. Pratte acknowledges that his
19 accountant provided privileged advice with respect to the
20 tax matters referenced (sic) to herein but does not intend
21 to divulge the substance of any advice.
22 Q. Okay. Earlier today you acknowledged that you're
23 waiving that privilege. So my question is: What is the
24 privileged advice Mr. Shisler provided you?
25 A. I have no idea. I have no memory of that.

```
 1  STATE OF ARIZONA        )
                            ) ss.
 2  COUNTY OF MARICOPA      )

 3
            BE IT KNOWN that the foregoing proceedings
 4  were taken before me; that the witness before testifying
    was duly sworn by me to testify to the whole truth; that
 5  the foregoing pages are a full, true and accurate record
    of proceedings, all done to the best of my skill and
 6  ability; that the proceedings were taken down by me in
    shorthand and thereafter reduced to print under my
 7  direction.

 8
            I certify that I am in no way related to any
 9  of the parties hereto nor am I in any way interested in
    the outcome hereof.
10

11          [X]  Review and signature was requested.
            [ ]  Review and signature was waived.
12          [ ]  Review and signature not required.
            [ ]  Review and signature was requested, but
13  deponent did not do so within 30 days after notification.

14          I certify that I have complied with the
    ethical obligations set forth in ACJA 7-206(F)(3) and ACJA
15  7-206 J(1)(g)(1) and (2).  Dated at Phoenix, Arizona,
    this 23rd of August, 2020.
16

17                  _____
                    ANITA LANDEROS, RPR
18                  Certified Reporter
                    Arizona CR No. 50538
19

20              *    *    *    *    *    *

21          I certify that ANITA LANDEROS REPORTING, INC.,
    has complied with the ethical obligations set forth in
22  ACJA 7-206 (J)(1)(g)(1) through (6).

23
                    _____
24              ANITA LANDEROS REPORTING, INC.,
                    Registered Reporting Firm
25                   Arizona RRF No. R1077
```