# EXHIBIT 4



# *WOOLSTON & TARTER, P.C.*

*Practice Limited To Tax Controversy*
*(Including Civil Tax Litigation and Criminal Tax Defense)*
www.woolston-tarter.com

| Arizona Office | *Tim A. Tarter, Esq.* | Idaho Office |
|---|---|---|
| | *Kacie N. Dillon, Esq.* | |
| **Suite B-218** | *Philip C. Wilson, Esq.* | **Suite 660** |
| **2525 East Arizona Biltmore Circle** | *Jonathan A. Halmi, Esq.* | **250 South 5th Street** |
| **Phoenix, Arizona 85016-2133** | *Terence D. Woolston, Esq., Of Counsel* | **Boise, Idaho 83702-7735** |
| **Telephone (602) 532-9199** | *Anne W. Durning, Esq., Of Counsel* | **Telephone (602) 532-9199** |
| **Facsimile (602) 532-9193** | | **Facsimile (602) 532-9193** |

August 31, 2020

Kercsmar & Feltus PLLC
c/o Gregory B. Collins, Esq.
7150 E. Camelback Road, Suite 285
Scottsdale, AZ  85251

    **Re:**  **Pratte** *v. Bardwell, et al.; Case No. 2:19-cv-00239-PHX-GMS*
        ***EXPERT REPORT OF TIM A. TARTER, ESQ.***

Dear Mr. Collins:

  As you requested, I am providing you with a written expert opinion regarding Federal tax issues related to the above-referenced litigation.  I am not an attorney for any party to this litigation nor have I ever provided legal advice to any party to this litigation.  My opinions below are based on my 35 years of Federal tax legal experience and knowledge.

**BACKGROUND**

  I am the co-founder and president of the law firm Woolston & Tarter, P.C.  My practice focuses exclusively on Federal tax disputes including IRS civil and criminal tax audits and investigations, administrative appeals, litigation and IRS collection matters.  My background includes serving as a senior attorney with the IRS Chief Counsel's office (1988 – 1995) while concurrently working for the U.S. Justice Department as a Special Assistant United States Attorney, representing the IRS in Federal bankruptcy proceedings.  As tax counsel to IRS revenue agents, collection officers and criminal agents, I worked extensively in the settlement and litigation of international and domestic tax audit issues.  Additionally, I served as an instructor to the IRS's Examination, Collection and Criminal Divisions, teaching a variety of subjects, including information gathering techniques and fraud case development.

  Leaving government practice in 1995, I worked at KPMG as a Tax Manager in its Boston office before joining Snell & Wilmer's Phoenix office as a senior tax associate in 1996.  Since 1999 I have owned and managed Woolston & Tarter, P.C., a tax defense and litigation focused law firm.  In 2007, I became Counsel to Ahrens DeAngeli, a Federal gift and estate planning and audit defense firm with offices in California, Washington and Idaho.

## *WOOLSTON & TARTER, P.C.*

Pratte v. Bardwell, et al.
Expert Report of Tim A. Tarter
August 31, 2020
Page 2

In addition to being licensed in all Arizona and Idaho Federal and State courts, I am also licensed in the U.S. Tax Court and the U.S. Court of Federal Claims. I have also been admitted *pro hac vice* in various Federal District Courts, including the southern and central districts of California and the eastern district of Texas. I received my law degree from Willamette University College of Law in 1986 and my undergraduate degree from Oregon State University in 1983. A complete copy of my *Curriculum Vitae* is attached.

Although I continue to lecture at various tax forums, I have not authored any publications in the past ten years. In the past four years I have not testified as an expert at a hearing or trial.

In preparing this opinion, I did not correspond with or speak directly to any parties (other than their counsel), but relied exclusively on the pleadings and various documents that were provided for my review in reaching my conclusions. These include:

- Ronald H. Pratte's 2006 Form 709 (United States Gift (and Generation-Skipping Transfer)) Tax Return with Exhibits;

- Plaintiff's First Amended Mandatory Initial Discovery Responses with Exhibits.

- Transcript of Deposition of Ronald Pratte on February 27, 2020; and

- Transcript of Deposition of William Shisler, CPA, on August 14, 2020.

This report focuses on issues surrounding Mr. Pratte's use of an IRS Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return (herein referred to as the "Form 709") to report transfers of various assets to Mr. Bardwell in 2006.

**RELEVANT FACTS**

I have been asked to assume the following facts:

As reported or otherwise alleged in Plaintiff's First Amended Mandatory Initial Discovery Reponses and attached exhibits, in December 2005, Ronald Pratte ("Plaintiff" or "Pratte") gathered Jeffrey Bardwell ("Defendant" or "Bardwell"), Justin Pratte, Trever Pratte, Todd Carriere (married to Mr. Pratte's niece), and Jaime Ziparo (Mr. Pratte's son-in-law) for a meeting at the North Las Vegas airport. There, Mr. Pratte told the five attendees that he was planning to sell his company, and that he wanted his family members in attendance to join in a

**WOOLSTON & TARTER, P.C.**

Pratte v. Bardwell, et al.<br>
Expert Report of Tim A. Tarter<br>
August 31, 2020<br>
Page 3

new venture that would develop land and build homes in Arizona. Mr. Bardwell, a long-time Pratte employee, was the only attendee who was not connected to the Mr. Pratte by family relation.

In exchange for $2,000,000 and identical interests in various properties transferred to the four family members in attendance, Mr. Bardwell agreed to work without salary solely for Mr. Pratte until Mr. Pratte died. Combined with the $2,000,000, the value of assets transferred to Mr. Bardwell (and his then wife) in exchange for his promise, totaled over $7,000,000. After making the transfers, Mr. Pratte worked with his CPA, William Shisler, and in early 2007, they filed an IRS Form 709, reporting all of the property (wealth) transfers made to Mr. and Mrs. Bardwell to the IRS. The other transfers of wealth made to Mr. Pratte's family members were also reported on this same IRS form.

From 2006 until around March 2018, Mr. Bardwell kept his promise and worked for Mr. Pratte. But in March 2018, Mr. Bardwell ceased communicating with, and stopped working for, Mr. Pratte. In December 2018, Mr. Pratte filed this suit which included claims of breach of contract, promissory estoppel, and unjust enrichment.

**SCOPE OF ENGAGEMENT AND SUMMARY OF OPINIONS**

With this factual background assumed, I have been asked to provide an opinion regarding whether reporting the cash and property transfers of wealth to the Bardwells as reported on Form 709 was appropriate and whether reporting these transfers on Form 709 is evidence that Mr. Pratte intended these transfers to be an unconditional gift.

I find no legal or factual support for a thesis that reporting the cash and other assets transferred to Bardwell on Pratte's 2006 Form 709 precludes a finding of compensatory intent by Pratte. Rather, the filing of the Form 709 is consistent with Mr. Pratte making a conditional gift to Mr. Bardwell in exchange for Bardwell's promise of lifetime employment. Alternatively, the amounts transferred to Bardwell in 2006 resulted in the formation of a constructive trust, requiring repayment to Pratte when Bardwell failed to comply with their oral agreement.

**ANALYSIS**

Subtitle A of the Federal Tax Code, specifically, 26 U.S.C. §§ 61 – 63, generally includes the receipt of any and all income and property as taxable income. Although property acquired through gift or inheritance is generally excluded from gross taxable income, gifts from an employer to an employee are included in an employee's taxable income as compensation. See U.S.C. § 102(c)(1).

***WOOLSTON & TARTER, P.C.***

Pratte v. Bardwell, et al.<br>
Expert Report of Tim A. Tarter<br>
August 31, 2020<br>
Page 4

Subtitle B of the Federal Tax Code, specifically, 26 U.S.C. §§ 2001 – 2801, generally subjects the transfers of wealth not otherwise taxed by Subtitle A, to Estate and Gift taxes. These Estate and Gift taxes are more properly referred to as "Wealth Transfer" or excise taxes since the tax obligation falls on the transferor, not the recipient. 26 U.S.C. §§ 2501 – 2502. 26 C.F.R. (Treas. Reg.) § 25.2511-2(a) provides clarification on this point as follows:

> The gift tax is not imposed upon the receipt of the property by the donee, nor is it necessarily determined by the measure of enrichment resulting to the donee from the transfer, nor is it conditioned upon ability to identify the done at the time of the transfer. On the contrary, the tax is a primary and personal liability of the donor, is an excise upon his act of making the transfer, is measured by the value of the property passing from the donor, and attaches regardless of the fact that the identity of the donee may not then be known or ascertainable.

However, the gift tax is not imposed on incomplete gifts. Treas. Reg. § 2511-2(b). If the donor reserves any power over the property's disposition, the gift may be wholly or partially incomplete. Treas. Reg. § 25.2511-2(c) provides that a gift is incomplete in every instance in which a donor reserves the power to revest the beneficial title to the property in himself. For example, in IRS Private Letter Ruling 200308046, the IRS determined the sons' oral promise to their father to return a gifted residence back to him at his request, resulted in an incomplete gift and a constructive trust in favor of their father, requiring the sons' reconveyance of the home back to their father. See also IRS Revenue Ruling 54-537, 1954-2 C.B. 316, where the right to revest the beneficial title to property transferred in trust by the donor is an incomplete gift, and Revenue Ruling 74-365, 1974-2 C.B. 324, where the IRS determined a gift was not a completed gift because the gift was revocable.

The Form 709 has been used to eliminate income taxes otherwise due by the recipient (donee) of transferred property. This was apparently one reason why Pratte used it here. See Deposition of Ronald Pratte dated February 27, 2020, p. 256. But as mentioned above, gifts between employer and employee are presumptively subject to the income tax regime of Subtitle A of the Internal Revenue Code. By treating the transfer of property to an employee as a gift, the employer (donor) loses a valuable tax deduction (employee compensation expense) and incurs a substantial gift tax liability.

Similar facts to those here were discussed by the Supreme Court of Wyoming in Ewing v. Hladky Construction, Inc., 48 P.3d 1086 (2002), where the court reviewed a gift of shares between the company and an employee reported on a Form 709. The court noted that reporting the transfer on a Form 709 had the intended benefit of saving the employee income taxes on the transfer. Although the court found that both parties agreed the stock was a "gift" the court also found the gift had a reversionary interest, to be returned to the donor upon the employee's

*WOOLSTON & TARTER, P.C.*

Pratte v. Bardwell, et al.<br>
Expert Report of Tim A. Tarter<br>
August 31, 2020<br>
Page 5

termination of employment. As cited in the court's opinion, Section 4552 of the Restatement of the Law Second, Property 2d, at § 31.2 provides that:

> The owner of personal property may make a gift thereof to another person (the donee) in which the donor retains a reversionary interest by delivering the personal property to the donee ... with the manifested intention that the donee acquire an ownership that terminates ... on the occurrence or non-occurrence of some special event or condition.

The Wyoming court ultimately upheld the trial court's findings that the stock gift was conditional and required its return upon the employee's termination of employment.

In 2006 the Federal tax rate on reportable gifts over $2,000,000 was 46 percent. That same year, Bardwell's tax rate on income over $336,550 was 35 percent. In effect, Mr. Pratte, by reporting the transfer of cash and property to Bardwell on Pratte's 2006 Form 709, effectively saved Bardwell at least $2,450,000 ($7,000,000 x .35) in personal income taxes. Mr. Pratte effectively lost the value of an income tax deduction of the same amount and incurred a gift tax on the transfer of over $3,220,000 (7,000,000 x .46).

Therefore, the IRS was certainly not harmed by how this transfer of wealth to Bardwell was reported by Mr. Pratte on his Form 709. There was certainly no attempt to evade any taxes or commit fraud by Pratte. To the contrary, Mr. Pratte walked away from a valuable business deduction and paid gift taxes on an incomplete or conditional gift to Bardwell, effectively overpaying taxes to the IRS of approximately $3,220,000. Although Mr. Pratte should be able to recover the cash and property transferred to Bardwell since his gift was conditional, he is unable to now recover the gift taxes he paid to the IRS on these transfers as reported on the Form 709. See 26 U.S.C. § 6511(a).

**CONCLUSION**

The filing of Form 709, reporting the property (wealth) transfers to Bardwell, is consistent with Mr. Pratte making a conditional gift to Bardwell. Pratte was certainly not aware in 2007 that Bardwell would later violate the agreement between them. Reporting the transfers to Bardwell on the Form 709 does not preclude the return of the property back to Pratte. Notwithstanding the use of the Form 709 to report the transfers to Bardwell, they were subject to a reversionary interest, or alternatively, subject to the terms of a constructive trust. In addition, Pratte's reliance on Bardwell's promise of life-time employment resulted in Pratte overpaying gift taxes on the conditional gift.

**_WOOLSTON & TARTER, P.C._**

Pratte v. Bardwell, et al.
Expert Report of Tim A. Tarter
August 31, 2020
Page 6

I reserve the right to supplement this opinion if additional documents, depositions or other materials are provided to me. My hourly rate for providing this report and any additional expert services is $560.00 per hour.

Very truly yours,

WOOLSTON & TARTER, P.C.

Tim A. Tarter, Esq.

TAT:cjw
Encl.

# *WOOLSTON & TARTER, P.C.*

## TIM A. TARTER, ESQ.
2525 East Arizona Biltmore Circle
Suite B-218
Phoenix, Arizona 85016
Tel:  602.532.9197
Fax:  602.532.9193

### ✦——— PROFESSIONAL EXPERIENCE ———✦

**1999 - Present**   *Co-Founder and President, Woolston & Tarter, P.C.*
Former IRS senior attorney, now leading a national tax practice representing clients in all aspects of federal, state and international tax matters, including Internal Revenue Service audits and appeals, Tax Court litigation and foreign competent authority matters.  In addition to handling a wide range of substantive and compliance matters, also experienced in handling procedural and litigation issues, including FATCA reporting matters, discovery disputes, lien and levy collection matters, and attorney-client privilege issues.

**1998-1999**   *Of Counsel, Streich Lang, P.A., Phoenix, Arizona*
Practice focused on international, IRS and state tax controversy and audit resolution, including criminal tax defense.

**1996-1998**   *Senior Associate, Snell & Wilmer, LLP, Phoenix, Arizona*
Practice focused on Tax Court litigation and IRS audit resolution, including criminal tax defense.

**1995-1996**   *Tax Manager, KPMG Peat Marwick, Boston, Massachusetts*
Responsible for planning and supervising all federal and state tax compliance functions for corporations and individuals.  Coordinated and resolved tax audits and FASB 109/FIN 48 reporting issues.

**1988-1995**   *Senior Trial Attorney, Office of IRS Chief Counsel*
Tax Counsel and Legal Coordinator to IRS CEP (Large Case) audit program, with direct responsibility for development and litigation of cases.  Duties included serving as tax counsel to IRS examination teams of several Fortune 500 corporations.  Also served as an adviser to IRS Examination, Collection and Criminal Divisions.  Appointed National Issue Specialist (IRC § 263A) and Special Assistant United States Attorney.

**1986-1988**   *Tax Accountant, Arthur Young & Company, Portland, Oregon*
Completed and reviewed federal and state tax returns for corporations, partnerships, estates and individuals.  Designed and implemented federal, international and state tax strategy

## ✦──── SIGNIFICANT REPRESENTATIONS ────✦

- $100 million transfer pricing litigation and subsequent settlement involving Japan and U.S. taxing authorities.  Transfer Pricing Reporter describes the settlement as "a result unprecedented in Japanese competent authority negotiations."  BNA Tax Management, Vol.11 No. 10 (9/18/02) at 423.

- $100 million IRS Extraterritorial Income ("ETI") exemption audit and Tax Court mediation.

- $40 million IRS employment tax litigation under IRC § 419A.

- $22 million IRS trust fund recovery assessments against company executives for unpaid excise taxes.

- $20 million IRS disallowance of international hotel chain's pre-paid expenses.

- $10 million IRS disallowance of investment and energy tax credits.

- $8 million tax shelter losses and civil fraud penalties.

- Multiple gift and estate disputes exceeding $5 million.

- $3.5 million innocent spouse tax abatement.

- Tax-exempt entity dispute resolution (private foundations and universities).

- Multiple Captive Insurance premium cases in audit, IRS Appeals and Tax Court.

## ✦──── SELECTED OPINIONS ────✦

Avrahami v. Commissioner, 149 T.C. 144 (2018) (Captive Insurance)

Minnick v. Hawley Troxell Ennis & Hawley, LLP, 157 Idaho 863 (2015) (Tax malpractice)

Evans v. Commissioner, T.C. Memo. 2014-237 (Business promotional expenses)

Deihl v. Commissioner, 134 T.C. 156 (2010) (Innocent Spouse)

Aloe Vera of America, Inc., v. U.S., 580 F.3d 867 (9th Cir. 2009) (Wrongful disclosure litigation)

Nakano v. U.S., 2009 WL 2176311 (D. Ariz., July 21, 2009) (Trust fund recovery)

U.S. v. Fitzpatrick, 2008 WL 853055, 101 A.F.T.R.2d 2008-1180 (D. Ariz., Feb. 04, 2008) (Summons enforcement contempt proceeding)

U.S. v. Landon, 98 A.F.T.R.2d 2006-7518 (N.D. Cal. Oct. 30, 2006) (IRS Summons enforcement limitations in partnership gift context). Opinion analyzed in Akers, Steven R. "Attorney-Client Privilege Issues for Estate Planning Attorneys in Tax Litigation," *ABA eReport*, 2007

Harkins v. Commissioner, T.C. Memo. 2001-100, 2001 WL 427629, (2001) (pre-paid income recognition issues)

Booth v. Commissioner, 108 T.C. 524, 1997 WL 328581, 21 Employee Benefits Cas. 1494, (1997) (test cases for over 2000 pending cases involving employee benefit deductions)

Salih v. Commissioner, T.C. Memo. 1994-627, 1994 WL 706221 (1994) (home office deductions)

Laird v. Commissioner, T.C. Memo. 1994-564, 1994 WL 621976 (1994) (tax shelter promoter and fraud penalty issues)

Bliss Valley Growers v. Commissioner, T.C. Memo. 1994-533, 1994 WL 579951 (1994) (administrative and litigation costs)

In re Stevenson, 153 B.R. 52, 1993 WL 108051 (Bkrtcy. D. Idaho 1993) ("substantive consolidation" in bankruptcy context)

Estate of Ravetti v. Commissioner, T.C. Memo. 1993-343, 1993 WL 289270 (1993) (tax shelter issues)

Oregon Trail Mushroom Co. v. Commissioner, T.C. Memo. 1992-293, 1992 WL 104783 (1992) (investment and energy tax credit issues)

## ✦——— SPEECHES/PUBLICATIONS ———✦

Speaker, Gem State Tax Symposium, IRS Compliance Campaigns, June, 2019
Speaker, Arizona State Bar Convention, The New Partnership Tax Audit Rules, June 2018
Panelist, Delaware Captive Insurance Assoc., IRS Challenges to Micro-Captives, Sept. 2016
Speaker, N.C. Captive Insurance Assoc., Defending Micro-Captives from IRS Attack, Aug. 2016
Speaker, Gem State Tax Symposium, Nuts & Bolts of IRS Controversies, June 2016
Panelist, Captive Insurance Company Assoc., Small Captives: As the World Turns, April 2016
Panelist, Captive Insurance Company Assoc., IRS Scrutiny of Small Captives, March 2016
Panelist, ABA Tax Section May Meeting, Micro-Captive Insurance Update, 2015
Expert Panelist, Bisk Education Inc., Monthly Federal Tax Updates, 1999 – 2017
Speaker, Idaho State Bar Annual Meeting, Federal Trust Fund Liability, July 2011
Speaker, Southwest Tax Conference, IRS Document Requests, Dec. 2010
Speaker, Estate Planning Council, Estate and Gift Audit Process, Feb. 2010
Speaker, Annual Advanced Estate Planning Seminar, IRS Appeals, Sept. 2009
Speaker, Idaho Family Law Section, IRS Tax Relief for Innocent Spouses, May 2008
Speaker, Idaho Society of CPAs, Tax Practice Ethics and Quality Control, Dec. 2007
Speaker, Estate Planning Council, IRS Summons Authority, Oct. 2007
Speaker, Law Education Institute, various topics, 2002 – 2004
Speaker, Phoenix Tax Workshop, Disclosure Forms 8275 and 8275R, Feb. 2002
Speaker, Tax Executives Institute, IRS Audit Issues, Nov. 1999
Speaker, National Business Institute, Federal Tax Update in Arizona, Nov. 1999
Speaker, Lorman Educ. Services, Federal & Arizona Employment Tax Update, Nov. 1999
Speaker, IRS Restructuring and Reform Act of 1998, Tax Executives Institute, September 1998

Speaker, Valley Estate Planners, Family Limited Partnerships, September 1997
Instructor, Keller University, "Federal Tax & Management Decisions," Summer, 2003
Author, "You Can Reduce the Chance of an Audit," Idaho Business Rev., Jan. 2007
Author, "Circular 230 in Estate Planning:  A Primer," J. of Pract. Estate Planning, Dec. 2006
Author, "Tax Court Rule 155:  Avoiding a Lose-Lose Situation," Tax Notes, June 14, 1999
Author, "TEFRA Audit Provisions: Don't Wait for an Audit to Understand Them," Tax Notes, July 26, 1999
Author, "CPAs: Are You Privileged," Arizona AICPA NewsLedger, November 1998

## ✦——— IRS PUBLISHED MEMORANDA ———✦

Field Service Advisory, 1995 WL 1918301 (IRS FSA, Sep 12, 1995) (foreign tax credits).

Non-Docketed Service Advice Review, 1995 WL 1922024, 1995 IRS NSAR 5093 (IRS NSAR, Sep 12, 1995) (foreign tax credits).

Field Service Advisory, 1995 WL 1918535 (IRS FSA, Aug 16, 1995) (wage and accountable plan issues).

Field Service Advisory, 1995 WL 1770806 (IRS FSA, Jan 06, 1995) (transferred stock gains).

Field Service Advisory, 1994 WL 1725566 (IRS FSA, Nov 23, 1994) (disguised dividends).

Non-Docketed Service Advice Review, 1994 WL 1868740, 1994 IRS NSAR 5774 (IRS NSAR, Nov 23, 1994) (allocation of value to covenant not to compete).

Field Service Advisory, 1994 WL 1725548 (IRS FSA, Oct 21, 1994) (use of noninterest bearing debt to compute the avoided cost interest percentage under § 263A).

Non-Docketed Service Advice Review, 1994 WL 1868694, 1994 IRS NSAR 5295 (IRS NSAR, Sep 12, 1994) (various capitalization issues under § 263A(f)).

Non-Docketed Service Advice Review, 1994 WL 1868693, 1994 IRS NSAR 5294 (IRS NSAR, Sep 09, 1994) (capitalization of training costs).

Non-Docketed Service Advice Review, 1994 WL 1868780, 1994 IRS NSAR 6221 (IRS NSAR, Mar 17, 1994) (employee liability for employer's failure to withhold employment taxes).

Non-Docketed Service Advice Review, 1994 WL 1868692, 1994 IRS NSAR 5293 (IRS NSAR, Jan 10, 1994) (capitalization of interest expense applicable to development costs under § 263A).

Non-Docketed Service Advice Review, 1993 WL 1611342, 1993 IRS NSAR 5292 (IRS NSAR, Nov 09, 1993) (deductibility of undisbursed litigation deposits).

Non-Docketed Service Advice Review, 1991 WL 11239244, 1991 IRS NSAR 8695 (IRS NSAR, Sep 26, 1991) (interest accrued on split-dollar life insurance policies for key employees).

✦──── **HONORS AND AWARDS** ────✦

- 2013 – Present    Mountain States "Super Lawyer" by Thomson-Reuters
- 2016    Enterprise Risk Captive Insurance Pioneer by London-based Captive Review

✦──── **EDUCATION** ────✦

J.D. 1986    *Willamette University College of Law* (Salem, Oregon)
B.S. 1983    *Oregon State University* (Finance/Accounting)

✦──── **LICENSES/CERTIFICATIONS** ────✦

2007    State Bar of Idaho
1999    State Bar of Arizona
1986    State Bar of Oregon (inactive)
1988    United States Tax Court

✦──── **PROFESSIONAL MEMBERSHIPS** ────✦

American Bar Association, Tax Section
Arizona State Bar Association & Tax Section
Idaho State Bar Association & Tax Section