LAW OFFICES OF THOMAS M. CONNELLY
Thomas M. Connelly (Az. Bar. No. 012987)
6720 North Scottsdale Road, Suite 305
Scottsdale, Arizona 85253
Phone: (602) 957-1993
Facsimile: (602) 957-2137
Tconnelly2425@aol.com

LAW OFFICES OF THOMAS J. MARLOWE
Thomas J. Marlowe (Az. Bar No. 016640)
6720 North Scottsdale Road, Suite 305
Scottsdale, Arizona 85253
Phone: (602) 957-1993
Facsimile: (602) 957-2137
Tmarlowe2425@outlook.com
Attorneys for Defendants Bardwell

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Ronald H. Pratte,<br><br>    Plaintiff,<br><br>vs.<br><br>Jeffrey Bardwell and Fanny F. Bardwell, husband and wife,<br><br>    Defendants. | Case No.: 2:19-cv-00239-PHX-GMS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

Plaintiff's Response *(Dkt. # 61)* to Bardwell's Motion *(Dkt. # 57)* is premised upon illogical interpretations of prior testimony provided by Pratte's former CFO/CPA William Shisler, presents narrow legal concepts considered in a vacuum, provides only superficial analysis, and demonstrates Pratte's desire to evade issues he cannot effectively dispute. To be viable, Pratte's claims would require this Court to disregard basic principles of contract law, tax law, existing state and federal employment laws and regulations,

common business practices and, most importantly, common sense. Pratte's use of distraction and misdirection is understandable. He has no other choice. His claims and defenses are untenable.

I. **Under No Theory Is The Gift Tax Pratte Paid A Recoverable Form of Damages**

Pratte made identical, simultaneous, and unsolicited gifts to Bardwell and others. Pratte now claims that with respect to Bardwell alone it was not a gift, but upfront compensation paid in exchange for Bardwell's future performance of personal services. In his response, Pratte attempts to distract from, but fails to confront the following basic and simple legal realities:

- If the transfers to Bardwell were a gift, the transferor (Pratte) must pay gift tax and file a Form 709 gift tax return;

- If the transfers were contractual consideration and compensation to Bardwell for future services, the transferee (Bardwell) must pay income and employment tax; and

- Pratte's payment of gift tax in consideration for Bardwell's purported services does not obviate Bardwell's duty or liability to pay income tax, nor does it absolve Pratte from reporting his payment of compensation to Bardwell and paying his employer share of employment taxes.

Pratte alleges that he and Bardwell formed a contract where Pratte would pay Bardwell cash and property in consideration for Bardwell agreeing to work for Pratte, that the contract was "a well-defined contract between two sophisticated, well-informed parties," and there was no donative intent because the assets transferred were a substitute for Bardwell's previous salary. Under these facts, Pratte, as a matter of law, had no

2

obligation to pay gift tax. Not at the time he transferred the property. Not ever. And that remains true regardless of whether Bardwell performed the alleged contractual services.

Rather than acknowledge that, if there was a contract he cannot hold Bardwell responsible for his own errant decisions, Pratte recharacterizes their alleged compensatory relationship as a "conditional gift." Indeed, Plaintiff's expert (Tarter) invoked this characterization as the premise for his report. That characterization and Tarter's report are fatally flawed and contrary to established law.

    1.    <u>Pratte Intentionally Mischaracterizes Bardwell's Argument</u>:

Pratte does not dispute that 26 U.S.C. § 2512 and the regulations thereunder definitively provide that no gift tax was required under the facts alleged by Pratte. Instead, he intentionally mischaracterizes Bardwell's argument. Pratte claims Bardwell is arguing that Pratte's gift tax was *not yet due* at the time Pratte paid the tax and that Bardwell is claiming Pratte should have waited to see whether Bardwell fully performed. *(Dkt. # 61, pp. 9-10)*. Pratte's mischaracterization of Bardwell's argument appears intentional. It avoided the substantive issue while invoking the tortured reasoning espoused by his expert--that a contract for future services can be treated as a conditional gift.[1]

Pratte claims Bardwell's consideration (services) allegedly given in exchange for property transferred under an arm's-length contract *is* the condition. What he fails to

---

[1] Gifts may be made conditional, and the authorities Pratte cites in his separate motion for summary judgment *(Dkt. # 55)* do involve conditional gifts. But those authorities expressly refer to transfers *without* consideration, a position at odds with his contract claim. Pratte nonetheless continues to rely on his fatally flawed logic.

address and intentionally avoids, however, is the reality that the satisfaction or failure of the contrived condition would not impact the legal status of the transfer. Either way, there is no gift. If Bardwell did not satisfy the alleged condition – full performance of services, Pratte could revoke the transfer and, as Pratte acknowledges, there would be no gift. But if Bardwell performed the alleged services in full, there also would be no gift, because Pratte's transfer would be for full consideration in money *or money's worth* under 26 U.S.C. § 2512 and the amount of Pratte's gift would be, as a matter of law, zero under 26 C.F.R. § 2512-8. Pratte does not and cannot dispute this conclusion.

Effectively, Pratte's position is that the mere uncertainty over *how* the amount of his gift would come to be zero, rather than the *certainty* that it *would* come to be zero, required him to value the gift at over $7 Million and pay gift tax. It makes no sense.

2.      Bardwell Did Not Argue That Pratte Had to Wait 12-Years to Pay Taxes:

Pratte suggests he paid gift tax because "the IRS was not going to wait 12 years for payment." *(Dkt. # 61, pp. 9-10)* Again, Pratte implies that his payment of gift tax substituted for timely payment of employment and income tax (by both parties). It did not. Pratte is correct that the IRS would not wait 12 years to receive tax payments. But under Pratte's set of facts, his erroneous payment of gift tax did not solve that problem. Rather, it was his own violation of federal tax rules that prevented the IRS from becoming aware that tax payments were due. Had Pratte filed the appropriate information return (a Form W-2 or 1099) and sent copies to Bardwell, as all employers are required to do, the IRS and Bardwell both would have known Pratte's position was that Bardwell had received income.

4

3.  *Ewing v. Hladky Construction, Inc. is Inapposite:*

Pratte reliance upon *Ewing v. Hladky Construction, Inc., 48 P.3d 1086 (2002),* is misplaced for several reasons. While the court in *Ewing* did treat the transfer of stock by the owner of the employer as a conditional gift, the payment of gift tax, albeit incorrect, was not an issue.[2] In *Ewing,* unlike this case, both parties agreed the transfer of stock was a gift, not compensation for future services. Thus, the payment of gift tax as a form of recoverable damages was not at issue. Most significantly, unlike Pratte, the employer in *Ewing* did not try to have it both ways by arguing the stock transfer was *both* a contingent gift and consideration supporting a contract for *future* services.[3] Unlike what Pratte now claims, the employer in *Ewing* asserted the conditional gift as the basis for his position, not as a rationalization for having paid gift tax on a transaction he claimed was an arm's length exchange of property for services involving no donative intent as a justification to charge his employee for the gift tax he paid.

In summary, the *Ewing* case is wholly distinguishable. The employer in *Ewing* asserted that the transfer was a conditional gift only to obtain the return of unique property

---

[2] The arrangement of the parties in that case is a prototype stock compensation arrangement. It is squarely and definitively governed by 26 U.S.C. § 83. That section applies to property transferred in connection with the performance of services where there is a requirement that the property be forfeited upon a specified condition, which typically is the termination of employment, as was the case in *Ewing*.

[3] While the employee alleged that the stock was in lieu of a bonus for *past* (versus future) services, the employer contended, and the court agreed, that there was no contractual consideration for the stock—the opposite of Pratte's current claims.

5

(stock), not as a twisted rationalization for claiming damages for gift taxes paid erroneously.

   4.   Pratte's Erroneous Payment of Gift Taxes Was Not Reasonably Foreseeable:

As a final argument, Pratte contends that he is entitled to recover damages for his incorrect payment of gift taxes because those damages were "within the contemplation of the parties" or "foreseeable" to Bardwell. The flaws in Pratte's reasoning abound.

First, if the facts are as Pratte alleges, as a matter of law, he owed no gift tax related to the transfers to Bardwell. Pratte did not owe gift tax if Bardwell fully performed because it would be (per Pratte) upfront compensation for services. He did not owe gift tax if Bardwell breached, because he could recover his property. Thus Bardwell's alleged breach did not cause Pratte to overpay gift tax. If Pratte sincerely believed he and Bardwell had a contractual relationship, then Pratte caused his own problem when he paid gift tax on a transfer of property that was not a gift at all but was consideration for future services.

Second, Pratte is essentially contending that Bardwell should have nonetheless foreseen Pratte would pay a tax he was not obligated to pay and that Bardwell's analysis under 26 U.S.C. § 2512 is irrelevant. But that begs the question: If Bardwell was the "sophisticated party" Pratte has alleged him to be (to make his purported contract with Bardwell enforceable) wouldn't the issue of whether Pratte was obligated to pay gift tax at all be relevant to whether those damages were remotely foreseeable? It makes no sense.

Pratte relies upon Bardwell's own testimony to support his "foreseeability" argument. Five separate times in his brief Pratte cites to one portion of Bardwell's

testimony, i.e., that at the time he was handed a $2,000,000 check Bardwell said to Pratte it was "like winning the lottery" to which Pratte replied, "No, it's better than winning the lottery 'cause I'm paying the taxes on it." *See Plaintiff's Controverting Statement of Facts, ¶ 36*. Pratte unreasonably characterizes this statement as "proof" that Bardwell had knowledge that Pratte intended to pay gift tax. The conversation does not constitute proof of Pratte's claims. Rather, Bardwell's statement reveals that he did not view that check as compensation at all which eliminates any reasonable inference that Bardwell believed he formed a contractual relationship with Pratte, or that he was accepting an offer of compensation for future employment.

Pratte's argument is plausible only if common usage is disregarded. "Like winning a lottery" is a metaphor for events that bring lifelong financial security without contractual duties or obligations. A lottery winner is freed from the need to work and can enjoy the obligation-free winnings. No one would use that metaphor to describe a contract obligating them to provide decades of personal services without further compensation. Moreover, Pratte's response to Bardwell's statement (which Pratte apparently now adopts) undermines his own argument. If Pratte believed Bardwell was obligated to provide personal services for Pratte's remaining lifetime, and that Pratte's payment of the tax was merely part of the compensation for those services, why would he tell Bardwell it is *better than winning a lottery*? The contention is preposterous.

The Court should grant Bardwell summary judgment that under no theory may Pratte recover the gift taxes he paid and which under his own facts he never owed.

II. **Pratte Cannot Defeat Summary Judgment On His Contract or Promissory Estoppel Claim:**[4]

The parties do not dispute the general law governing these two claims and, in large part, cite to the same legal authorities. They do, however, dispute which Party is entitled to summary judgment.

1. <u>Pratte Has Presented No Evidence Sufficient to Establish a Contract or an Enforceable Promise</u>:

Bardwell denies there was any offer, a clear acceptance, or a contract, but for purposes of brevity, Bardwell will focus his reply upon Pratte's failure to show sufficiently specific terms to establish a contract exists and his inability to prove mutual intent.[5]

A valid contract requires proof of "an offer, an acceptance, consideration, and <u>sufficient specification of terms so that the obligations involved can be ascertained</u>." *Savoca Masonary Co. v. Homes & Son Constr. Co.*, 112 Ariz. 392, 394, 542 P.2d 817, 819 (1975)(emphasis added); *See also, Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 270 P.3d 852 (App. 2011)(finding that among other elements a valid contract requires the intent of both parties to be bound); *Brookhaven Housing Coalition v. Solomon,* 583 F2d 584, 593 (2nd Cir. 1978)("If essential terms of an agreement are omitted or are phrased in too indefinite a manner, no legally enforceable contract will result")(citations omitted).

---

[4] Although there are legal differences between the two claims (law and equity), the alleged underlying offer and acceptance, or promise are factually indistinguishable and are, therefore, discussed in unison.

[5] Omission of any argument in this Reply is solely due to page limitations and is not intended as a waiver.

8

*a. There Are No Terms:*

In this case essential terms are not merely too indefinite, they are non-existent. Pratte described his alleged contract as "a verbal contract that Jeff Bardwell would work for me until I died" (in exchange for the $2 Million check and other consideration). (*Dkt. # 61, 10:8-12).* In support of his position Pratte presents witnesses who claim that was their *understanding* of the situation. Whether true or false that is the only thing Pratte's witnesses (or Pratte for that matter), has alleged with any clarity, i.e., that there was a contract *to work for* Pratte. But what does "work for Pratte" mean?

Pratte and Bardwell had no pre-existing personal services agreement. Bardwell previously managed a lumber yard for Pratte and was one of 3-4,000 employees. So, under the terms of this alleged contract, what was Bardwell expected to do? What was the agreed upon scope of his duties? What was the minimum amount of time he had to work each day, week, or year under this alleged contract? What if he worked more than the typical 40-hours per week? Was Bardwell required to operate heavy equipment or engage in physical labor or dangerous tasks without worker's compensation insurance or adequate training or safety equipment in violation of state labor laws? What state or federal labor laws did Bardwell knowingly agree to waive (if waivable) under the alleged contract? Was this an employment at-will contract? If so, what was their agreement as to how Bardwell's hourly, daily, or annual efforts under the contract would be credited if the relationship terminated? (This is another reason Pratte seeks to characterize his alleged contract as a conditional gift, i.e., he wants the entire gift returned). Would Bardwell have wanted more or was he entitled to more than he was previously paid to manage a lumber yard if he had

9

agreed to provide personal services to the irrefutably demanding Mr. Pratte? Was Bardwell's purported agreement based solely upon the cash and properties transferred, or was it also based upon his expectation that the family business he and his partners formed and funded at Pratte's suggestion and with Pratte's gift would grow with Pratte's help and generate exponentially greater financial rewards? Did Pratte promise to help their business grow? If Pratte did not help their business grow or the business failed did that affect the alleged agreement? Were there <u>any</u> limitations as to what Bardwell may be required to do, or like slaves in Biblical Egypt, was Bardwell obligated to wallow in mud pits at the Dunes making bricks without straw?

These simple questions reveal there are no sufficient terms allowing this Court to find the existence of an enforceable contract. Moreover, this is not a situation where a court could rationally "supply" missing terms to make an existing contract otherwise enforceable. After all, this is hardly a typical situation with a pre-defined role or job description and there was no prior course of conduct or similar dealings between the parties which would permit the Court to reasonably supply missing terms. In this case, there are no terms at all, in which case the Court would be creating the actual contract. For similar reasons Pratte's promissory estoppel claim also fails. *See Branch Banking & Trust Co. v. Sossaman & Guadalupe Plaza, LLC,* 2014 WL 1304717, LEXIS 43430, * 12 *(D. Nev. 2014)*(dismissing promissory estoppel claim stating, "[t]o recognize and enforce a promise, it must be definite enough so that the court can determine the scope of the duty, and the limits of performance…"); *Kahn Creative P'ships, Inc., v. Nth Degree, Inc.,* 2011 WL 1195680, LEXIS 34248 *11-12 (C.D. Cal. 2011)*(granting summary judgment on oral

contract and promissory estoppel claims finding terms too simple to be enforceable and there was a lack of mutual assent).

### b. Pratte Cannot Prove Mutual Intent:

The very testimony Pratte relies upon repeatedly in his Response, i.e., that Bardwell analogized his receipt of the $2 Million check to winning the lottery demonstrates that Pratte cannot prove mutual intent or that Bardwell knew he was entering into a contract. *(See above, pp. 7-8)* This conclusion is irrefutable when considered in combination with the wholesale lack of terms and with Bardwell's Response *(Dkt. # 63)* to Pratte's cross-motion *(Dkt. #55)*.[6] Pratte's inability to specify the terms of their alleged contract or to prove mutual intent requires summary judgment on behalf of Bardwell.

2. Pratte Does Not Sufficiently Refute Bardwell's Estoppel Argument:

Pratte does not substantively challenge Bardwell's estoppel argument. His entire response boils down to a frivolous contention that the cited cases involve *income* tax returns not *gift* tax returns. The holdings in the cases cited by Bardwell, however, are clear and the reporting purpose of each form is immaterial as the avowals are the same. This is yet another example of Pratte wanting everything his way. Pratte is before this Court claiming he had a contract with Bardwell and made no gift to Bardwell. Yet, Pratte has not (at least through the time of his deposition) amended his tax returns (probably because

---

[6] In his 2010 divorce proceeding Bardwell took the position, *under oath and in court filings*, that the transfers to him were gifts not compensation and disclosed Pratte and the other gift recipients as witnesses to support his position.

it would potentially expose him to tax litigation and the possibility that he would owe fines and penalties for unpaid employment taxes). Pratte should be estopped from claiming he has a contract with Bardwell.

## **CONCLUSION**

Pratte quotes sayings about the certainty of death and taxes. There is, however, a more applicable and helpful axiom---the simplest answer is usually the correct answer ("Occam's Razor"). The simplest answer here is that the transfers by Pratte were a gift.

Dated this 8th day of March, 2021.

By: /s/ Thomas J. Marlowe
LAW OFFICES OF THOMAS J. MARLOWE
Thomas J. Marlowe
6720 North Scottsdale Road, Suite 305
Scottsdale, Arizona 85253
Phone: (602) 957-1993
Tmarlowe2425@outlook.com

/s/ Thomas M. Connelly
LAW OFFICE OF THOMAS M. CONNELLY
Thomas M. Connelly
6720 North Scottsdale Road, Suite 305
Scottsdale, Arizona 85253
Phone: (602) 957-1993
Tconnelly2425@aol.com

## CERTIFICATE OF SERVICE

I, Thomas J. Marlowe, hereby certify that on March 8, 2021, I electronically transmitted the foregoing document to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant(s) in this case and emailed a copy of this document to the following:

By: /s/ Thomas J. Marlowe

Gregory B. Collins
Eric B. Hull
KERCSMAR FELTUS & COLLINS PLLC
7150 East Camelback Road, Suite 285
Scottsdale, Arizona 85251
gbc@kfcfirm.com
ebh@kfcfirm.com